UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LEON GARRETT, JR.,

    Petitioner,

    v.                                                                             Case No. 23-CV-31-SCD

DANIEL CROMWELL,
    *Warden, Redgranite Correctional Institution*,

    Respondent.

# DECISION AND ORDER
# DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

    Leon Garrett, Jr. requests that his convictions for sexual assault of a child and exposing his genitals to a child be reversed and the case be remanded for a new trial. *See* ECF No. 1 at 6. Garrett filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his trial counsel provided ineffective assistance by failing to introduce evidence of the victim's history of cold sores prior to his alleged assault. *Id.* at 4. As explained herein, the state court's handling of this issue did not violate the Constitution or laws or treaties of the United States. Therefore, Garrett is not entitled to federal habeas relief, and I will deny his petition and dismiss this action.

## BACKGROUND

    In March 2014, S.L. noticed a bump on the lip of her seven-year-old daughter M.L.T. and asked her about it. ECF No. 8-3 ¶ 2. M.L.T. responded that—when she and S.L. were staying at Garrett's home two days prior—Garrett woke her up, took her to the bathroom, and exposed his penis to her. *Id.* M.L.T. stated that Garrett tried to put his penis in her mouth,

but she kept her lips closed, and Garrett also kissed her on the lips using his tongue. *Id.* S.L. took M.L.T. to the hospital, where she was diagnosed with herpes. *Id.*

The State arrested Garrett and charged him with child enticement, exposing his genitals to a child, and first-degree sexual assault of a child. *Id.* ¶ 4. S.L. had indicated in M.L.T.'s medical records that M.L.T. had a pre-existing history of cold sores. *Id.* Therefore, the court granted the State's pretrial motion to exclude evidence of M.L.T.'s herpes diagnosis. *Id.*

Garrett's first trial resulted in a mistrial due to a hung jury. *Id.* ¶ 5. During the second trial, M.L.T. explained that she knew Garrett as a friend of her mother. ECF No. 8-10 at 38:10–11. She testified that Garrett exposed his "stuff" to her in the bathroom and pressed it against her lip. *Id.* at 13:8–16:3. She stated that Garrett kissed her on the lips in the bedroom afterwards and advised her, "don't tell nobody." *Id.* at 17:8–19. M.L.T. testified on cross examination, "I really do get bumps on my lip a lot because I have like a cold. It's like a cold bump." *Id.* at 36:1–2. She also said that she had told her mother the bump may have been there "because [Garrett] kissed me." *Id.* at 36:5–8.

S.L. testified that she noticed M.L.T.'s lip was "swollen" as if she had an accident and that M.L.T. recounted the incident in response to her inquiry. *Id.* at 90:17–91:10. The pediatrician who examined M.L.T. after the allegations came to light testified that M.L.T. had no physical injuries besides the bump on her lip, which could not be explained from mere observation but appeared to simply be a cold sore. ECF No. 8-11 at 31:17–32:9.

Garrett testified in his defense. He explained that S.L. had stayed with him previously and told him a couple weeks before the incident that he "need[ed] to put a roof over her head." *Id.* at 58:20–60:8. Garrett told S.L. that he could not do so, but she tried to persuade him

otherwise. *Id.* at 60:17–25. On March 26, 2014, S.L. called Garrett crying and saying that she needed to come over, so he went and picked her up. *Id.* at 59:6–11. Garrett testified that he believed S.L. was trying to blackmail him into giving her a home or some cash when she later accused him of assaulting M.L.T. *Id.* at 66:15–19.

Ultimately, a jury convicted Garrett of first-degree sexual assault of a child and exposing his genitals to a child. ECF No. 8-14 at 2:12–15. Garrett filed a postconviction motion, arguing that his trial counsel was ineffective for failing to introduce evidence that M.L.T. had a history of cold sores. ECF No. 8-15. The postconviction court held an evidentiary hearing, where Garrett's trial counsel testified that he believed the court's ruling about M.L.T.'s herpes diagnoses precluded him from introducing her history of cold sores. ECF No. 8-16 at 27:20–28:9. The postconviction court rejected Garrett's ineffective assistance claim. *Id.* at 55:2–56:6. The Wisconsin Court of Appeals affirmed the postconviction court's ruling. ECF No. 8-3. The Wisconsin Supreme Court denied Garrett's petition for review. ECF No. 8-4 at 175.

On January 9, 2023, Garrett filed a habeas petition in federal district court. ECF No. 1. The clerk of court randomly assigned the matter to me, and all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 7. Daniel Cromwell, the warden who has custody of Garrett, filed an answer to the federal habeas petition, ECF No. 8; Garrett filed a brief in support of his petition, ECF No. 9; Cromwell filed a brief in opposition, ECF No. 12; and Garrett filed a reply brief, ECF No. 15.

## STANDARD OF REVIEW

Garrett's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, a prisoner in custody pursuant to a state-court judgment

3

of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 572 U.S. 415, 419 (2014).

"A legal principle is 'clearly established' within the meaning of [§ 2254(d)(1)] only when it is embodied in a holding of [the Supreme Court]." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13.

Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court either "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. A writ of habeas corpus may not issue under the "unreasonable application" clause "simply because the federal court concludes that the state court erred." *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537

4

Case 2:23-cv-00031-SCD     Filed 11/04/24     Page 4 of 10     Document 17

U.S. 19, 24–25 (2002)). "Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Id.* (citation omitted); *see also Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (observing that "'unreasonable' means something like lying well outside the boundaries of permissible differences of opinion") (citation omitted)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). To obtain relief under § 2254(d)(2), a petitioner must demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013)).

## ANALYSIS

Garrett alleges one potential ground for relief in his federal habeas petition: that his trial counsel provided ineffective assistance by failing to introduce evidence of the victim's

5

history of cold sores prior to his alleged assault. ECF No. 9 at 3. The respondent contends that Garrett has failed to show the state court decision was contrary to or an unreasonable application of applicable federal law. ECF No. 12 at 2.

I. A Doubly Deferential Standard Applies to Ineffective Assistance Claims.

Criminal defendants have a constitutional right "to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To succeed on an ineffective-assistance-of-counsel claim, a habeas petitioner "must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (citing *Strickland*, 466 U.S. at 688, 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[C]ourts need not address both prongs of *Strickland*" if the petitioner makes an inadequate showing as to one. *Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012) (citing *Strickland*, 466 U.S. at 697).

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, when a *Strickland* claim is evaluated under § 2254(d)(1), the standard of review is said to be "doubly deferential." *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (per curiam)).

On top of this double deference, I must bear in mind that "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*; *see also Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). As the Supreme Court emphasized in *Harrington*: "If this standard is difficult to meet, that is because it was meant to be." 562 U.S. at 102. Although § 2254 "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," a federal court's authority to issue a writ of habeas corpus under that section is reserved for cases "where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.*

## II. The State Court did not Rule Contrary to or Unreasonably Apply *Strickland*.

Garrett argues that his trial counsel prejudicially erred by failing to introduce evidence of the victim's history of cold sores prior to the alleged assault. ECF No. 9 at 3. He contends that this shortcoming allowed the jury to infer that the cold sore was physical corroboration for M.L.T.'s testimony. *Id.* at 5. Garrett maintains that there is a reasonable probability the result of his trial would have been different had the evidence not been omitted, and therefore, that counsel's error left Garrett without the representation guaranteed by the Sixth Amendment to the U.S. Constitution. *Id.*

Garrett is essentially attempting to relitigate his postconviction claim from state court. But federal courts "cannot grant relief under AEDPA by conducting [their] own independent inquiry into whether the state court was correct as a de novo matter." *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004). As explained above, Garrett must establish that the state court's decision was objectively unreasonable. *See Kimmelman*, 477 U.S. at 375.

Here, the Wisconsin Court of Appeals explicitly applied the proper ineffective-assistance standard—looking for deficient and prejudicial performance under *Strickland*. ECF No. 8-3 ¶ 16. The court did not reach the question of deficient performance because it determined that, even if trial counsel's performance was deficient, Garrett failed to establish he was prejudiced. *Id.* ¶ 21. In reaching that conclusion, the court of appeals observed that the jury heard other evidence: (1) that was sufficient to support Garrett's convictions, (2) that could have offset any perceived link between M.L.T.'s cold sore and the assault, and (3) pertaining to Garrett's culpability (i.e., Garrett's proposed theory for the assault allegations). *Id.* ¶¶ 18–20.

Garrett attacks the second observation, insisting that the jury was left to infer M.L.T.'s cold sore corroborated her testimony about the assault. ECF No. 9 at 5. But Garrett does not explain what is so unreasonable about the state court's logic. He suggests that trial counsel's testimony during the postconviction hearing contradicts the court's conclusion because counsel testified that he did not order transcripts from Garrett's first trial, and therefore, could not have conducted a thorough investigation of the facts. ECF No. 15 at 4. To the contrary, the transcript from the postconviction hearing reveals that trial counsel testified that, while he may not have personally ordered the transcripts, he did obtain copies of the transcripts, thoroughly review them, and reference them during trial with a couple of the witnesses. ECF No. 8-16 at 8:14–9:17.

In terms of overcoming the connection between the cold sore and the alleged assault, the state court noted that the jury heard testimony: (1) from a doctor who reported no physical evidence of sexual assault and who testified that the source of M.L.T.'s cold sore was unknown, and (2) from M.L.T. herself that she suffered from cold sores (although she

8

Case 2:23-cv-00031-SCD    Filed 11/04/24    Page 8 of 10    Document 17

Here, the Wisconsin Court of Appeals explicitly applied the proper ineffective-assistance standard—looking for deficient and prejudicial performance under *Strickland*. ECF No. 8-3 ¶ 16. The court did not reach the question of deficient performance because it determined that, even if trial counsel's performance was deficient, Garrett failed to establish he was prejudiced. *Id.* ¶ 21. In reaching that conclusion, the court of appeals observed that the jury heard other evidence: (1) that was sufficient to support Garrett's convictions, (2) that could have offset any perceived link between M.L.T.'s cold sore and the assault, and (3) pertaining to Garrett's culpability (i.e., Garrett's proposed theory for the assault allegations). *Id.* ¶¶ 18–20.

Garrett attacks the second observation, insisting that the jury was left to infer M.L.T.'s cold sore corroborated her testimony about the assault. ECF No. 9 at 5. But Garrett does not explain what is so unreasonable about the state court's logic. He suggests that trial counsel's testimony during the postconviction hearing contradicts the court's conclusion because counsel testified that he did not order transcripts from Garrett's first trial, and therefore, could not have conducted a thorough investigation of the facts. ECF No. 15 at 4. To the contrary, the transcript from the postconviction hearing reveals that trial counsel testified that, while he may not have personally ordered the transcripts, he did obtain copies of the transcripts, thoroughly review them, and reference them during trial with a couple of the witnesses. ECF No. 8-16 at 8:14–9:17.

In terms of overcoming the connection between the cold sore and the alleged assault, the state court noted that the jury heard testimony: (1) from a doctor who reported no physical evidence of sexual assault and who testified that the source of M.L.T.'s cold sore was unknown, and (2) from M.L.T. herself that she suffered from cold sores (although she

attached no time frame to the statement). ECF No. 8-3 ¶ 19. This evidence may not overwhelmingly suggest the jury should have been aware that the cold sore might not have originated from the alleged assault. Nevertheless, the evidence does tend to support that possibility, and a jury would have been left with nothing but mere speculation to suppose the cold sore had anything to do with Garrett. As such, defense counsel was under no obligation to try to provide an alternative explanation for something that didn't need explaining in the first place. Plus, Garrett does not challenge the court's other observations about sufficient evidence and the jury's opportunity to evaluate Garrett's culpability. *See id.* ¶ 18; ECF Nos. 9, 15. These observations further support the court's conclusion that Garrett was not prejudiced by the absence of evidence regarding M.L.T.'s history of cold sores. Given these compounding factors supporting Garrett's convictions, I cannot say there is a reasonable probability the result of the trial would have been different had the evidence in question been introduced. *See Strickland*, 466 U.S. at 694. For these reasons, I find the court of appeal's conclusion about the *Strickland* prejudice prong was not objectively unreasonable. Accordingly, Garrett has not met his burden of demonstrating that he is eligible for relief under § 2254.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." For a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find the district court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, I do not believe a reasonable jurist would find my ruling debatable. Accordingly, a certificate of appealability will be denied.

## CONCLUSION

For all the foregoing reasons, the court **DENIES** the petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody, ECF No. 1, and **DISMISSES** this action. The court also **DENIES** the petitioner a certificate of appealability. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 4th day of November, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge